UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Mark Herickhoff, dba,
Herickhoff Farms,

Plaintiff,

Civ. No. 00-144/RHK/RLE
**MEMORANDUM OPINION AND ORDER**

vs.

Bonanza Valley State Bank, and
Randall Peterson, individually,

Defendants.

---

Thomas J. Lyons, Jr., Consumer Justice Center, Maplewood, Minnesota, for Plaintiff.

Jerome D. Feriancek, Thibodeau, Johnson, Feriancek & Costley, Duluth, Minnesota, and William F. Logan, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, Kansas, for Defendants.

---

## Introduction

This case arises out of an encounter between Defendant Randall Peterson ("Peterson"), President of Defendant Bonanza Valley State Bank ("Bonanza"), and Plaintiff Mark Herickhoff ("Herickhoff") in a pub in Padua, Minnesota. Herickhoff alleges that the encounter violated the provisions of the automatic stay imposed by 11 U.S.C. § 362 of the Bankruptcy Code. Herickhoff also asserts state common law claims for invasion of privacy, assault, and intentional infliction of emotional distress. Currently

FILED JUL 11 2000
FRANCIS E. DOSAL, CLERK
JUDGMENT ENTD
DEPUTY CLERK

before the Court is Defendants' Motion to Dismiss. For the reasons set forth below, the Court will grant the Motion in part and deny it in part.

**Background**[1]

On June 18, 1996, Herickhoff signed a promissory note payable to American State Bank in the amount of $383,285.51. (Peterson Aff. ¶ 9.) On June 26, 1996, Bonanza Valley State Bank ("Bonanza") purchased a $150,000 participation in the promissory note between American State Bank and Herickhoff. (Lyons Aff. Ex. A (Participation Agreement) and Peterson Aff. Ex. B (Promissory Note).) Per the Participation Agreement, Bonanza shared proportionately in payments made by Herickhoff. (Lyons Aff. Ex. A.)

On January 11, 1999, Herickhoff filed for Chapter 11 bankruptcy and listed Bonanza as a creditor, which received notice of the pending bankruptcy. (Compl. ¶¶ 5-6.) On April 26, 1999, Herickhoff entered into a Stipulation with American State Bank

---

[1]For purposes of this motion, the Court takes as true all facts alleged in the Complaint, and draws all reasonable inferences in favor of the Plaintiff, the non-movant. See Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).

Although a motion to dismiss is normally not accompanied by substantive affidavits or other evidence, a court deciding such a motion is permitted to consider material other than the Complaint itself if the Plaintiff's claims are based on the material. See Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997). Because Count I of Herickhoff's Complaint alleges a violation of the automatic stay pursuant to 11 U.S.C. § 362, the Court is satisfied that the participation agreement between Bonanza and American State Bank, the Stipulation for Adequate Protection/Relief from the Automatic Stay between American State Bank and Herickhoff, and the Affidavit of Default and Failure to Cure, are part of the basis for Herickhoff's claims.

providing, inter alia, that Herickhoff would make the following payments to American State Bank: $50,000 by April 26, 1999, $25,000 by June 19, 1999, and $25,000 by August 19, 1999. (Lyons Aff. Ex. C (Stipulation).) Bonanza State Bank was not a party to the Stipulation. On June 7, 1999, the Bankruptcy Court for the District of Minnesota approved the Stipulation between American State Bank and Herickhoff. (Peterson Aff. Ex. C (Bankruptcy Court Order).)

On October 8, 1999, Herickhoff and a friend, Joe Mohs ("Mohs"), went to the Padua Pub in Padua, Minnesota. (Compl. ¶ 7.) As they were sitting and talking in a booth, Peterson approached, stood next to Herickhoff, and stared at him. (Id. ¶¶ 10-11.) Herickhoff greeted Peterson and introduced Mohs. (Id. ¶ 13.) Peterson responded by asking, "Say, when are you going to pay the money you owe us?" (Id. ¶ 14.) Herickhoff stated, "I don't owe you anything, Randy." (Id. ¶ 14.) Mohs asked Peterson to leave them alone. (Id. ¶ 15.) Peterson turned to Mohs and said, "F–ck you, you f—ker." (Id. ¶ 16.) Mohs made another comment and Peterson turned to Herickhoff and said, "Well when are you going to pay, you are three months behind." (Id. ¶ 17.) Mohs again asked Peterson to "leave us alone or we'll have to get the owner to throw you out." (Id. ¶ 18.) Peterson then stood near Mohs, who again asked Peterson to leave, which Peterson ignored. (Id. ¶ 19.) Mohs pushed Peterson out of his way and went to ask the bar's owner, Mr. Rooney, to ask Peterson to leave the bar. (Id.) Mr. Rooney told Peterson, "you know you can't do that here," and asked Peterson to leave. (Id. ¶ 20.) Mohs told

Peterson, "You seem to be intoxicated so why don't you leave and come back when you are sober." (Id.) Peterson swung around and hit Mohs on the shoulder and said, "you f–ker you," and then left. (Id. ¶ 21.)

On October 8, 1999, prior to the Padua Pub incident, American State Bank filed its Affidavit of Default and Failure to Cure. (Lyons Aff. Ex. E (Affidavit of Default and Failure to Cure).) On October 10, 1999, the Bankruptcy Court issued its order that the automatic stay of Section 362(a) of the Bankruptcy Code was immediately terminated as to American State Bank and that American State Bank was authorized to foreclose its interest in the collateral and to foreclose its mortgage on real property owned by Herickhoff. (Lyons Aff. Ex. F (Bankruptcy Court Order).)

**Analysis**

**I. Standard of Review**

In considering a motion to dismiss for failure to state a claim upon which relief may be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must take as true the allegations contained in the complaint. Cooper v. Pate, 378 U.S. 546, 84 S. Ct. 1733 (1964) (per curiam). A complaint

> must be viewed in the light most favorable to the plaintiff and should not be dismissed merely because the court doubts that a plaintiff will be able to prove all of the necessary factual allegations. "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief."

Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982) (quoting Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978)). Viewing the complaint in this manner, the court may dismiss a case under Rule 12(b)(6) only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Hishon v. King & Spalding, 467 U.S. 67, 73, 104 S. Ct. 2229, 2232 (1984) (citing Conley v. Gibson, 355 U.S. 41, 45-46, 78 S. Ct. 99, 101-102 (1957)).

## II. Violation of the Automatic Stay in Bankruptcy Petitions

Herickhoff alleges that Peterson's conduct at the Padua Pub violated the automatic stay imposed by 11 U.S.C. § 362(a) of the Bankruptcy Code because it was an attempt to collect payments due under the Stipulation entered into between Herickhoff and American State Bank. 11 U.S.C. § 362(a) of the Bankruptcy Code provides that upon filing a bankruptcy petition, creditors of the debtor are prohibited from "recovering a claim against the debtor that arose before the commencement" of the bankruptcy case. 11 U.S.C. § 362(a)(1). The Code also provides that the automatic stay continues until the court grants relief by, inter alia, terminating the stay. 11 U.S.C. § 362(d). Defendants argue dismissal of this claim is appropriate because: (1) the debt Peterson sought to collect was not a pre-petition debt, but rather a post-petition debt that was not subject to the automatic stay; and (2) if the debt was pre-petition debt, the automatic stay was lifted

on October 8, 1999, when Defendants filed the Affidavit of Default and Failure to Cure.[2] (Defs.' Supp. Mem. at 7-10; Defs.' Reply Mem. at 2-5.)

### A. Pre-Petition vs. Post-Petition Debt

The automatic stay of 11 U.S.C. § 362 applies to "pre-petition claims, that is, claims which were or could have been commenced before the bankruptcy petition was filed or claims that arose prior to the filing of the petition." In re Transportation Sys. Int'l, Inc., 110 B.R. 888, 893 (D. Minn. 1990) (MacLaughlin, J.). The automatic stay does not apply to post-petition actions. See Bellini Imports, Ltd. v. Mason & Dixon Lines, Inc., 944 F.2d 199, 201 (4th Cir. 1991). Thus, the issue before the Court is whether Peterson was trying to collect a pre-petition debt, to which the automatic stay applied, or a post-petition debt, to which the automatic stay did not apply.

The Defendants argue that the automatic stay does not extend to attempts to collect money due pursuant to the Stipulation. (Defs.' Reply Mem. at 3.) Specifically, the Defendants contend that the automatic stay does not apply because the obligations created by the Stipulation only arose on execution of the Stipulation, which occurred after Herickhoff filed his bankruptcy petition. (Id. at 3-4.) The Defendants assert that this

---

[2] The Defendants do not argue in the instant Motion that Peterson's conduct on October 8, 1999 did not constitute an attempt to collect a debt. (Defs.' Supp. Mem. at 7; Defs.' Reply Mem. at 2.) The undersigned has serious reservations as to whether the October 8, 1999 confrontation between Herickhoff and Peterson can be construed as an attempt to collect a debt, but that issue is not presently before the Court.

conclusion is supported by In re Ernst, 45 B.R. 700 (Bankr. D. Minn. 1985). The Court disagrees.

The question before the Court in In re Ernst was whether an automatic stay remained in effect after confirmation of a plan of reorganization. Id. at 701. The court held that it did not, concluding that the effect of confirmation of a plan of reorganization is to "discharge the entire preconfirmation debt, replacing it with new indebtedness as provided in the confirmed plan." Id. at 702. The instant case, unlike In re Ernst, does not involve a plan of reorganization. The Stipulation was only entered into by Herickhoff and American State Bank and does not purport, either in its caption or in its content, to be a plan of reorganization. Thus, the Stipulation could not and does not operate to "discharge the entire preconfirmation debt" and, as a result, the rule set forth in In re Ernst does not apply.[3]

The Stipulation entered into by Herickhoff and the American State Bank established a payment schedule with the goal of creating adequate protection for the

---

[3] Herickhoff's obligations under the Stipulation are also distinguishable from cases in which the debt was incurred after the bankruptcy petition was filed. For example, in Turner Broadcasting Sys., Inc. v. Sanyo Elec., Inc., 33 B.R. 996, 999-1000 (N.D. Ga. 1983), the court held that a contract for broadcasting time that the debtor entered into five months after filing the bankruptcy petition was post-petition debt and therefore, an automatic stay was inapplicable. See id. at 999. At the time Mr. Rubin was forced into involuntary bankruptcy, he had not purchased broadcasting time from Turner. See id. Therefore, the automatic stay provisions did not apply to Turner Broadcasting because their claims were not commenced nor could have been commenced when Rubin's bankruptcy petition was filed. See id.

bank's interests in Herickhoff's property. (Lyon Aff. Ex. C.) Entering into that payment schedule does not, however, lift the automatic stay provisions of § 362. The Stipulation provides that the "Bank may obtain relief from the automatic stay on an ex parte, expedited basis" in the event of default. (Peterson Aff. Ex. B (Stipulation).) Thus, the Stipulation expressly recognizes that its enactment did not terminate the automatic stay in place by virtue of Herickhoff's Chapter 11 bankruptcy. Furthermore, the Defendants have provided the Court with no authority that a stipulation like the kind entered into in the instant case has the effect of satisfying the prerequisites of § 362 and terminating the automatic stay. Therefore, the Court concludes that Stipulation did not terminate the automatic stay and did not replace Herickhoff's pre-petition debt with a new indebtedness.

**B. The Automatic Stay Was Not Lifted Prior to the Bankruptcy Court Judge's Order of October 10, 1999.**

The Defendants argue alternatively that even if the debt was pre-petition, the automatic stay was lifted on October 8, 1999, when Defendants filed the Affidavit of Default and Failure to Cure. (Defs.' Reply Mem. at 4-5.) As a result, the Defendants claim, the automatic stay was lifted before Peterson's encounter with Herickhoff. (Id.)

Relief from an automatic stay may be requested, but "until such relief is granted, the stay remains in place and is effective nationwide without notice." In re Johns-Manville Corp., 57 B.R. 680, 686 (Bnkr. S.D.N.Y. 1986). Thus, an automatic stay

remains in effect until the court grants relief. See id. In the instant case, defendants requested relief from the automatic stay on October 8, 1999, and the court granted the stay on October 10, 1999. Therefore, the stay was in effect until October 10, 1999.

The Court's conclusion that the stay was still in effect on October 8, 1999, is further supported by the language of the Stipulation. As stated previously, the Stipulation provides that the "Bank may obtain relief from the automatic stay on an ex parte, expedited basis" in the event of default. (Lyons Aff. Ex. C.) The Stipulation does not provide that the filing of the affidavit terminates the automatic stay. To the contrary, the Stipulation states that "[u]pon filing of the Affidavit, the Court shall enter the proposed order." (Id.) Thus, the Stipulation recognizes that the Court grants relief from the automatic stay. Therefore, the automatic stay was not lifted until October 10, 1999, when the Bankruptcy Court Judge signed the Order.

Because the automatic stay still applied to the payments made by Herickhoff pursuant to the Stipulation, the Court will deny the Defendants' Motion as to Herickhoff's claim under 11 U.S.C. § 362(h).

## III. Invasion of Privacy

Herickhoff alleges that Peterson's attempt to collect a payment on October 8, 1999, constituted an invasion upon his privacy. (Compl. ¶ 32.) Specifically, Herickhoff claims that Peterson violated his right to seclusion by confronting him while he was dining in a public place. (Pl.'s Opp'n Mem. at 10.)

The Minnesota Supreme Court recently recognized the tort of intrusion upon seclusion in Lake v. Wal-Mart Stores, Inc., 582 N.W.2d 231, 235 (Minn. 1998). Quoting from the Restatement (Second) of Torts, the Lake court held that intrusion upon seclusion occurs when one "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns ... if the intrusion would be highly offensive to a reasonable person." See id. at 233 (quoting the Restatement (Second) of Torts, § 652B (1977)). Thus, a plaintiff must prove: (1) an intentional intrusion, physical or otherwise, (2) upon the solitude or seclusion of another or his private affairs or concerns, (3) which is offensive to reasonable person. See id.

Peterson argues that the Court should dismiss this claim because the encounter between Herickhoff and Peterson occurred in a public place, where Herickhoff had no right to seclusion and because Herickhoff has not alleged a physical intrusion analogous to a trespass. (Defs.' Supp. Mem. at 10-12; Defs.' Reply Mem. at 5-7.) Given the recency of the Minnesota Supreme Court's decision in Lake, Minnesota Courts have not yet developed the contours of what activities in an individual's life may be considered secluded. The Restatement provides that an intrusion may occur in a public place if the defendant has "invaded a private seclusion that the plaintiff has thrown about his person or affairs." Restatement (Second) of Torts § 652B cmt. c (1977). Viewing the allegations of the Complaint in Herickhoff's favor, the Court cannot conclude as a matter of law that because the incident occurred in a public place, Peterson did not invade Herickhoff's

solitude. Accordingly, the Court finds that setting in which Herickhoff's encounter with Peterson occurred does not create an insuperable bar to relief.

Peterson also argues that invasion upon seclusion did not occur as a matter of law because Herickhoff has not alleged an intrusion analogous to a trespass, as required by Georgia case law. In deciding Lake, the Minnesota Supreme Court cited with approval to Georgia's recognition of a common law right to privacy. Georgia's recognition of the right is significant, however, only in that it was the first state to recognize a cause of action for invasion of privacy. Lake, 582 N.W.2d at 234. The Minnesota Supreme Court gave no indication that it viewed Georgia's subsequent development of the right to privacy as persuasive. Absent a clear indication from the Minnesota Supreme Court that more is required than the elements set forth above, the Court declines to require that the invasion upon seclusion be analogous to a trespass. Therefore, the Court will deny the Defendants' Motion with respect to Herickhoff's claim for invasion upon seclusion.

## IV. Assault

Herickhoff alleges that Peterson assaulted him in the bar because of the assault and battery committed against Mohs, Peterson's drunkenness, and Peterson's vulgar speech. Peterson argues that Herickhoff has not alleged facts from which a jury could find that Peterson intended to cause apprehension of an immediate harmful or offensive contact. (Defs.' Supp. Mem. at 12-14; Defs.' Reply Mem. at 7-8.)

In Dahlin v. Fraser, 206 Minn. 476, 288 N.W. 851 (1939), the Minnesota Supreme Court stated:

> An assault is an unlawful threat to do bodily harm to another with present ability to carry the threat into effect. Mere words or threats alone do not constitute assault. When the words or threats are accompanied by a threat of physical violence under conditions indicating present ability to carry out the threat, they cease to be mere words or threats. The display of force must be such as to cause plaintiff reasonable apprehension of immediate bodily harm. Evidence that the party charged exhibited anger, used violent language and threatened to strike another while in his presence under circumstances indicating a present ability to carry out the threats is sufficient to show an assault.

Id. at 478, 288 N.W. at 852. In the instant case, Herickhoff has alleged that Peterson cornered him and Mohs, used profane language, and struck his friend. Viewing these allegations in a light most favorable to Herickhoff, the Court concludes that Herickhoff has asserted a cognizable claim under Minnesota law for assault. As a result, the Court will deny the Defendants' Motion as to Herickhoff's assault claim.

**V. Intentional Infliction of Emotional Distress**

Herickhoff alleges that Peterson's attempt to collect money and his use of physical force and profane language gives rise to a claim for intentional infliction of emotional distress. (Compl. ¶¶ 37-38.) The Defendants argue that Herickhoff cannot show that Peterson's conduct was extreme and outrageous. (Defs.' Supp. Mem. at 17.)

To prevail on a claim of intentional infliction of emotional distress, a plaintiff must satisfy four elements: (1) extreme and outrageous conduct, (2) intentional or reckless

conduct, (3) causing emotional distress, and (4) such distress must be severe. See Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-439 (Minn. 1983). In order for Peterson's conduct to be extreme and outrageous, it must be "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Id. at 439 (quoting Haagenson v. National Farmers Union Property and Cas. Co., 277 N.W.2d 648, 652 n.3 (Minn. 1979) (citing Restatement (Second) of Torts § 46 cmt. d (1965))).

The Court finds that Herickhoff's claim for intentional infliction of emotional distress is not based on extreme and outrageous conduct. Herickhoff's Complaint recounts in detail the events of October 8, 1999. Peterson's alleged conduct, although rude and obnoxious, is not shocking or egregious. Accordingly, the Court finds that even taking the allegations in Herickhoff's Complaint as true, Peterson's conduct was not "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." In reaching this conclusion, the Court rejects Herickhoff's reliance on Venes v. Professional Service Bureau, Inc., 353 N.W.2d 671 (Minn. Ct. App. 1984). In Venes, the Minnesota Court of Appeals considered whether actions taken by a collection agency to collect a debt for medical expenses were sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress. Id. at 673-75. Relying on the debt collector's repeated attempts to collect the debt, oral threats and abusive language, and its attempt to collect interest not owed to the underlying creditor, the Venes court found that the jury could conclude that the collector intentionally inflicted severe

emotional distress upon the plaintiffs. Id. Unlike Venes, the instant case involves a single, isolated incident between Peterson and Herickhoff, not repeated attempts to collect money. Furthermore, Herickhoff does not claim that the Defendants attempted to collect money beyond that owed under the Stipulation. As a result, the Court finds that Venes is distinguishable in severity from the instant case and does not support Herickhoff's claim that Peterson's conduct was extreme and outrageous. Accordingly, the Court will grant the Defendants' Motion as it relates to Herickhoff's intentional infliction of emotional distress claim.

## Conclusion

For the foregoing reasons, and based upon all of the files, records, and proceedings here, **IT IS ORDERED**, that Defendant's Motion to Dismiss (Doc. No. 10.) is:

1. **DENIED** as to Herickhoff's claims for violation of 11 U.S.C. § 362(h) (Count I); Invasion of Privacy (Count II), and Assault (Count III); and

2. **GRANTED** as to Herickhoff's claim for Intentional Infliction of Emotional Distress (Count IV).

July 11, 2000

RICHARD H. KYLE
United States District Judge